UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAN AGAINST XTINCTION A/K/A "MAX"<br><br>*Plaintiff*<br><br>v.<br><br>WHALE KILLING BASTARDS A/K/A<br>DANIEL MCKIERNAN & MASSACHUSETTS<br>DIVISION OF MARINE FISHERIES<br><br>JANE COIT & NATIONAL MARINE FISHERIES<br>SERVICE<br><br>ARTHUR SAWYER & MASSACHUSETTS MARINE<br>FISHERIES ADVISORY COMMISSON<br><br>JOHN HAVILAND<br><br>ROBERT MARTIN<br><br>*Defendants* | Civil Action No.<br><br>_____<br><br><br>8 March 2022 |

VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF
AND A REQUEST FOR A JURY TRIAL **FN1**

I the Plaintiff — Man Against Xtinction — SPEAKS:

1.      I am a scientist who is conducting a ongoing project over the last couple decades to

increase the remaining population of Northern Back Whales and to enhance the quality of their

marine environment in order to have the species delisted from its current status as a protected

species under the Endangered Species Act (ESA). I and my associates are being irreparably

injured in our ability to "recover" the NBW species by the Defendants' long and never ending

killing and otherwise harming of the NBW and its ESA listed designated critical habitat. The

Defendants marine fishery activities ("Fishing Activity") now constitutes prohibited conduct

_____

[1] M. A. X. is petition the Court pursuant to his First Amendment protected right to petition the
court and said protected right is enforceable directly against the court and any judicial magistrate
assigned to adjudicate the proceedings.

Case 1:22-cv-10364-IT   Document 1   Filed 03/09/22   Page 2 of 26

8 March 2022 Complaint in *M. A. X. v. Whale Killing Bastards et al. I.* (D. Mass 2022)        2

under the Endangered Species Act and the Marine Mammal Protection Act. The Defendants Massachusetts Division of Marine Fisheries ("MDMF" and the Massachusetts Marine Fisheries Advisory Commission ("MFAC") "Fishing Activity" concerns their acting in concert to license and regulate the deployment of pot and gillnet fishing gear that utilizes vertical buoy ropes ("VBR") in USA coastal waters. The Defendants Sawyer, Martin, & Haviland are MDMF and federally licensed fishers who in 2022 and previous years deploy pot and/or gillnet fishing gear off the Massachusetts coast. The Defendants Fishing Activity is killing and injuring ESA Listed Species of whales and sea turtles off the Massachusetts coast. It is also causing the current annual decline of the remaining population of NBW. I am seeking immediate and/or permanent injunctive relief from the Court to stop the Defendants from the further deployment of vertical buoy ropes in US coastal waters and otherwise conducting their said ESA prohibited activities pursuant to their Fishing Activity towards NBW and all other ESA Listed Species of whales and sea turtles. **FN2**

2.        As a Green Fisherman, who is a state licensed commercial & recreational lobsterpot fisher, I am also seeking injunctive relief from the Court to stop the state and federal defendants ("Government Defendants") from forcing me and other fishers to deploy VBR in US coastal waters. I do not want my fishing activities to pose as a threat to kill or injure ESA Listed Species of whales or sea turtles. By requiring licensed fishers to use of VBR, the federal and state defendants are preventing the establishment of a marketplace for Whale Safe fishing equipment. I and my associates have invented and developed whale safe fishing system for pot and gillnet fishing. But the Government Defendants requiring the use of VBR prevents my own using of the WSFS and preventing a marketplace where other licensed fishers would be motivated to buy and use my WSFS so their own fishing activity would be benign towards ESA Listed Species of whales and sea turtles.

---

[2] As a "Green Fisherman" the Plaintiff does not want to injure other species of marine wildlife when he attempts to sustainably harvest lobsters. He seeks to conduct his commercial fishing operations to be Whale Safe. The State Defendants have adopted regulations requiring the use of Vertical Buoy Ropes (VBR) or Killing Ropes in lobster/pot and gill net commercial fishing licensed by them. The State Defendant are threatening the Plaintiff with fines and loss of his right to fish if he does not use Killing Ropes that will cause him to "take" endangered marine wildlife in violation of the ESA's Section 9 prohibitions against such.

Case 1:22-cv-10364-IT   Document 1   Filed 03/09/22   Page 3 of 26

**8 March 2022 Complaint in *M. A. X. v. Whale Killing Bastards et al. I.* (D. Mass 2022)**                    3

3.      M. A. X. is a "Citizen Attorney General" authorized by Congress pursuant to 16 USC § 1540(G) to prosecute individuals engaged in ESA Section 9 prohibited conduct and to obtain prospective injunctive relief from the Court to stop the said prohibited conduct from occurring in the future. M. A. X. is seeking a permanent injunction against the Government Defendants from their further requiring the use of Vertical Buoy Ropes by him and other recreational and commercial licensed pot and gillnet fishers. **FN3**

4,      Upon information and belief, these killing and injuring of NBW by the Government are negligent and deliberate. The NBW are not alone as a species being intentionally exterminated by the Defendants. All other ESA Listed Species o whales **FN4** and sea turtles **FN5** by their said prohibited conduct deploying fishing gear using VBR. They are crimes of commission and omissions by the Whale Killing Bastard employees of the Defendant DMF. These employees are refusing to either comply with or enforce state and federal wildlife laws protecting NBW in order to wipe out the NBW to insure that the ESA will not be enforced against the fishing industry by any court or regulatory body. Generally, the Massachusetts agencies supervising the Defendants, the Office of the Secretary of Energy & Environmental Affaires and the Office of the Attorney General, have handed over all marine wildlife to the MDMF for its consumption and exploitation. The MDMF then insures that no state or federal; environmental law is enforced against the states fishing industry. They do so in violation of state law – most notably the Massachusetts Endangered Species Act which explicitly assigns all

---

[3] See 322 CMR § 4.13(c): "Surface Identification of Traps. 1. Single Traps. Single traps shall each be marked with a single buoy measuring at least seven inches by seven inches or five inches by 11 inches. Sticks are optional, but if used, shall not have a flag attached. 2. Trawls. The east end of a trawl shall be marked with a double buoy, consisting of any combination of two buoys measuring at least seven inches by seven inches or five inches by 11 inches and one or more three foot sticks. The west end of a trawl shall be marked with a single buoy measuring at least seven inches by seven inches or five inches by 11 inches buoy with a three foot stick and a flag."

[4] The Endangered Whales includes: (1) The Sei Whale, *Balaenoptera borealis*; (2) The Northern Black Whale, *Eubalaena glacialis*: (3) The Humpback Whale *Megaptera novaeangliae*; (4) The Fin Whale *Balaenoptera physalus*: and (5) The Blue Whale, *Balaenoptera musculus*.

5 The Endangered Sea Turtles include: (1) The Green turtle, *Chelonia mydas*,; (2) Loggerhead turtle, *Caretta caretta*,; (3) The Olive Ridley turtle, *Lepidochelys olivacea*; (4) The Hawksbill turtle, *Eretmochelys imbricate*; (5) The Kemp's Ridley turtle, *Lepidochelys kempii*; and (6) The Leatherback turtle, *Dermochelys coriacea*.

Case 1:22-cv-10364-IT   Document 1   Filed 03/09/22   Page 4 of 26

8 March 2022 Complaint in *M. A. X. v. Whale Killing Bastards et al. I.* (D. Mass 2022)                    4

endangered marine wildlife species to the care and protection of the state's Natural Heritage and Endangered Species Program.

5.      Because these whales are protected wildlife from being hunted or possessed by anyone absent a permit, in order to protect the whales from anthropogenic stressors that prevent their thriving sufficiently any longer to have a sustainable population any longer, I need to have government agencies ruthlessly obey the ESA in order that they be willing to mage coastal activities to prevent the killing or harming of individual whales and the critical natural resources that they need supplied by their marine ecosystem. Therefor the Government Defendants employees are violating my constitutional right to petition the government by their unwillingness to petition them in order to protect the ESA Listed Species when they only want to violate the ESDA in order to prevent its enforcement against the marine fishing industry.

6.      The Plaintiff is also now the object of a vendetta being conducted against him by Defendant Daniel McKiernan who in 2019 and 2020 retaliated against M. A. X.'s commencing lawsuits to enforce the ESA against the MDMF. He personally stopped MDMF employees from renewing M. A. X.'s recreational marine fishing permit and his requested Student Commercial Fishing permit.

7.      In 1996, this Court ruled that ESA Listed Species of whales and sea turtles are liable for every whale and sea turtles being caught by the VBR deployed in the Massachusetts state Fishing Activity that constitutes an ESA Section 9 prohibited taking. **FN6** The Court also ruled that the State Defendants requiring the use of VBR caused the catching of endangered whales by the said VBR laden fishing gear deployed by their licensed agents. The Court deemed it fitting to order the State Defendants to apply for an obtain an ESA Section 10 Incidental Take Permit from the federal government to authorize its commercial fisheries activities so they no longer would violate the ESA.

9.      The Court is mandated by the ESA and the Public Interest to ENFORCE the ESA's Section 9 prohibitions independent of the NMFS and especially so when NMFS is failing to enforce the ESA Section 9 prohibitions and is also itself killing and injuring ESA Listed

---

[6] See *Strahan v. Coxe*, 939 F. Supp. 963 (Dist. Mass. 1996) and 127 F. 3d 155 (1st Circuit, 1997) (Massachusetts marine fishing agency liable under ESA Section 9(a) for unlawful taking of ESA listed species of endangered whales by entanglements of endangered whales in fishing gear licensed and regulated this agency).

Species of whales and sea turtles. There the Court is under a mandated and non-discretionary duty imposed on it by Congress and the Constitution to stop the Defendants Fish Activity from any further conduct that is prohibited by ESA Section 9 take prohibitions.  The Court is under a mandated duty to stop the further deployment of Vertical Buoy Ropes into NBW Critical Habitat in the Gulf of Maine. These Killing Ropes are the single most significant cause for the fishing gear licensed and regulated by the State Defendants routinely entangling Endangered Whales and Sea Turtles. The simple deployment of Killing Ropes must be considered a categorical taking of endangered whales and sea turtles prohibited by the ESA's Section 9 prohibitions against taking Endangered Whale and Sea Turtles.

  10. The Plaintiff is also bringing supplemental claims against the non-government employee Defendants (i. e. Sawyer, Haviland and Martin) for tortious injuries inflicted on him and the Public by their being a public nuisance and for violations of the Massachusetts Civil Rights Act by using threats of killing endangered wildlife to interfere with M. A. X's enjoyment of the his rights under the Constitution & the Massachusetts Constitution to enjoy the his right to petition the government and enjoy the environment.

  11. In REPRISE, M. A. X. is Petitioning the Court for —

A. A DECLARATORY JUDGMENT declaring that the deployment of lobsterpot and gillnet fishing using vertical buoy ropes into the waters bounded by Northern Black Whale ESA Listed Critical Habitat is conduct prohibited in its own right as a per se prohibited taking of ESA Listed Species of whales and sea turtles pursuant to the ESA's Section 9 take prohibitions.

B. A PERMANENT INJUNCTION stopping the MDMF and McKiernan from requiring the Plaintiff and other recreational and commercial licensed fishermen to use VBRs on their fishing gear.

C. A PERMANENT INJUNCTION stopping Defendants Sawyer, Haviland and Martin from deploying off the USA coastline pot, gillnet or any kind of fishing gear utilizing vertical buoy ropes.

D. A PERMANENT INJUNCTION stopping Defendant McKiernan from bullying & intimidating Massachusetts government employees to coerce them from have direct communications with M. A. X & trespassing him from MDMF offices.

E.      The Plaintiff is also seeking appropriate award of compensatory and punitive damages against each of the Commercial Defendants.

13.     The Plaintiff is seeking a Jury Trial against each of the Defendants.

## The Parties

12.     Plaintiff Richard Maximus Strahan is an officer of Calm Earth Corporation, a 501(c)(3) IRS tax-exempted business and serves as its Chief Science Officer. He received a Masters' Degree from University of New Hampshire in 2020. His published graduate thesis evaluated the likelihood of the United States extirpating the Northern Black Whale species. According to the results of his scientific research, the Northern Black Whale's extinction by the end of the century is inevitable. Not only will NMFS and MDMF continue to murder these whales in violation of the ESA but wildlife interested NGOs or WINGOS will only aid the Fishing Industry in their continuing to successfully evade the enforcement of the ESA against it. He is licensed by the State Defendants to do recreational lobster pot fishing in Massachusetts State waters. He is also licensed as a commercial lobster pot fisherman by the State of New Hampshire. He is also an avid whale watcher and researcher on whales and sea turtles. He is employed as the Chief Science Officer of Whale Safe USA, a campaign to make the US coastline environmentally safe for endangered species of coastal whales and sea turtles. His business mailing address is % Calm Earth Corporation, Suite #3112, One Washing Street, Dover NH 03820.

13      Defendant Daniel McKiernan is being sued in his official capacity as the Director of the Massachusetts Division of Marine Fisheries & separately as a private individual for violating M. A. X.'s constitutionally protected rights under the Constitution and the Civil Rights Act. Defendant McKiernan's business mailing address is % Office of the Director, Division of Marine Fisheries, 251 Causeway Street, Suite 400, Boston, MA 02114 The Plaintiff intends to serve McKiernan IN HAND for his claims against him as an individual.

14.     Defendant Arthur Sawyer is being sued as an individual and separately in his official capacity as a member of the Massachusetts Marine Fisheries Commission. His business address is Arthur Sawyer, 368 Concord Street, Gloucester, MA 01930.

15.     Defendant John Haviland is being sued as an individual in his personal capacity. His business mailing address is John Haviland % PO Box 543, Green Harbor, MA 02041.

Case 1:22-cv-10364-IT   Document 1   Filed 03/09/22   Page 7 of 26

**8 March 2022 Complaint in *M. A. X. v. Whale Killing Bastards et al. I.* (D. Mass 2022)**                    7

16.     Defendant Robert Martin is being sued as an individual in his personal capacity. His business mailing address is Robert Martin, 392 Route 6A Sandwich, MA 02537.

## Jurisdiction and Standing

17.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) under the ESA, APA, 5 U.S.C. § 701 et seq. (APA), 28 U.S.C. § 1361 (mandamus) and may issue a declaratory judgment and further relief pursuant to 28 U.S.C. § 2201, 2202 (declaratory and injunctive relief). An actual, justiciable controversy now exists between Plaintiff and Defendants, and the requested relief is proper under 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 701–706. The ESA — 16 U.S.C. § 1540(g) — only grants jurisdiction to hear his ESA Section 9 claims to enforce the take prohibitions and does not provide the Court any jurisdiction to knowingly tolerate or ignore the prohibited taking of ESA listed wildlife species.

18.     Venue in this judicial district is proper under 16 USC § 1540(g) and 42 USC § 1983.

19.     The Plaintiff has Article III standing pursuant to his living and working in the habitats of Endangered Whales and Sea Turtles in the Gulf of Maine. He is an avid whale and sea turtle watcher. For the last two decades he has conducted a professional & scientific based program to recover the Northern Black Whale species from its government protected status as an endangered species. M. A. X./. is also a licensed commercial fisher in New Hampshire and a recreational fisher in Massachusetts. In 2021, M. A. X. obtained a scientific permit from the MDMF to experiment with whale safe systems for doing pot fishing in Massachusetts state waters He is a co-inventor of a whale safe fishing system (WSFS) for pot and gillnet fishing. He and his business associates are intending to offer their WSFS for sale in 2022.  Endangered whale species are migratory along the US Atlantic coastline. Their being killed and injured by the Defendants in Massachusetts adversely affects their appearance and presence in New Hampshire, Maine and in other coastal states. The Plaintiff has previously served the requisite notice under 16 USC § 1540(g) in a timely manner on each of the Defendants of his intent to bring the instant claims against them under the ESA.

20.     The Plaintiff has Article III standing because he is personally being injured by the Defendants unlawful activities as described in the following paragraphs.

21.     The Plaintiff conducts research on endangered species of whales and sea turtles off the US northeast Atlantic coast. These species decline and extinction is adversely affecting his scientific research interests in these species. As an enthusiastic "whale watcher" off the coastline of Massachusetts, New Hampshire and Maine he has a vested interest in protecting the abundance of whales for his viewing activities and to have more personal access to these whales by having them delisted as ESA protected species. More importantly, "whale watching" on Northern Black Whales is now banned by both Defendants NMFS and MDMF owing to their critically endangered species status. If M. A. X. is ever going to be able to go "whale watching" on Black Whale in the future, he must first stop NMFS & DMF's killing of these whales.

22.     As a commercial fishermen licensed in New Hampshire, recreational lobsterpot fisher in Massachusetts, and a licensed commercial fishing technology researcher in Massachusetts, the plaintiff is being injured by the Defendants by their requiring him to use vertical buoy ropes on his lobster pot gear. This requirement unlawfully exposes him to violate the ESA by causing the entanglement of EFA listed species of endangered whales and sea turtles in his fishing gear. Also, the Plaintiff seeks to increase the number of ESA listed species off the US coastline and this interest is adversely affected by his having to use VBR that kills and injures ESA listed species. Additionally, the Plaintiff is attempting to operate a "Whale Safe" business offering Lobsters for sale that were harvested in an environmentally safe manner. The Defendants requirement that he use VBR is antithetical to his commercial interests in operating a business to provide "Whale Safe" caught Lobsters for sale.

23.     The Plaintiff for over two decades operates a business as a recovery agent for the Northern Black Whale. He operates his business in New Hampshire, Massachusetts and Maine to protect and recover ESA listed species. His customers pay him money to stop the killing of whales and sea turtles and increase their numbers. The Defendants continued unlawful killing and injuring ESA listed species antithetical to the business interests of the Plaintiff.

Case 1:22-cv-10364-IT   Document 1   Filed 03/09/22   Page 9 of 26

**8 March 2022 Complaint in *M. A. X. v. Whale Killing Bastards et al. I.* (D. Mass 2022)**                                        9

24.     He cannot eat Lobsters as long as they are harvested in a manner that kills or injures ESA listed species. Despite his enjoyment the consumption of Lobsters. He no longer can do so until lobsterpot fishing no longer catches whales, kills and /or injures them.

**The Regulatory Scheme for the Protection of Endangered Species of Plants and Animals**

25.     In enacting the ESA, Congress recognized that certain species "have been so depleted in numbers that they are in danger of or threatened with extinction" and that these species are "of esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a) (2) and (3). The ESA imposes a mandatory and non-discretionary duty to review the status of biological species and to list those meeting the above cited criteria as ESA Listed Species of endangered wildlife. 16 USC Section 1533. The ESA protects imperiled species by listing them as "endangered." A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). The Secretary of Commerce is charged with administering and enforcing the ESA for most marine species, including North Atlantic Black Whales, and Congress then delegated this responsibility to NOAA. 50 C.F.R. § 402.01(b).

26.     The ESA's Section prohibits any degree of takings of ESA Listed Species including ones that are seen as not intentional but simply the result of conducting an activity in the habitat of an ESA Listed Species. 16 USC Section 1538(a). ESA Section 9(g) prohibits the simple "soliciting" or funding of any activity causing a prohibited taking. Any activity that is the "proximate cause" of a prohibited taking is a prohibited activity. The ESA Section 9 imposes a "strict liability" standard for causing a prohibited taking. All that matters is for an activity to cause a taking. Intent is not a factor. Since "lack of intent" offer no free "get of jail card" to any ESA offender, all ESA prohibited taking should be considered intentional by default. If a fisher is intentionally deploying fishing gear with VBR attached to it, then it must be seen as intentionally intending to catch an ESA Listed Species of whale and sea turtle also.

27.     Any activity of Hominin that causes ongoing ESA Section 9 prohibited takings in the past and is scientifically determinable to likely cause further prohibited takings in the future becomes in itself a *per se* prohibited activity pursuant to ESA Section 9 taking prohibitions without any required taking occurring every time the prohibited activity is conducted. The deployment in 2022 and beyond of VBR laden pot or gillnet fishing gear in Northern Black

Whale Critical Habitat in the Gulf of Maine is itself a per se prohibited conduct pursuant to the ESA Section 9 taking prohibitions. In 2022 any fisher simply deploying a single lobsterpot trawl employing with one attached vertical buoy into Black Whale ESA designated critical habitat rope is engaging in ESA Section 9 prohibited taking of ESA Listed Species of whales and sea turtles. There is no concurrent need for the gear to catch any endangered whale. The simple act of deployment of VBR attach fishing qualifies as an ESA Section 9 prohibited taking by the fisher.

28.     The ESA Section 9 take prohibitions is intended to be enforced by Courts against NMFS and its employees without any applicable deference to it as a government agency. The ESA imposes a mandated and non-discretionary on a District Court to enjoin any activity it recognizes caused an ESA Section 9 prohibited taking in the past of an ESA Listed Species and is likely to do so again in the future. The ESA does not allow the Court to either defer to NMFS nor to provide a defend the opportunity to take years to apply for and possibly obtain a permit from NMFS to take a listed species. Obviously, the very permit NMFS issues will be subject to its own ESA prosecution. Therefore, the Court must immediately stop the prohibited taking and put the burden of the defendant to show that it either has the requisite permit, that the permit is lawful or that its activity is not going to repeat the past prohibited taking.

29.     Any activity that engages in ESA Section 9 prohibited taking of any member of a endangered species is construed by the ESA As taking of the species itself. A prohibited taking of an ESA protected endangered species constitutes – without proof otherwise – constitutes an irreparable injury to the species ability to recover from its endangered status. No determination of an endangered species for ESA listing is accompanied by a description on how many of them can get killed or otherwise taken without irreparably injuring the ability of the species to recover from its endangered status. The only buffer under the Act recognizing a possible safety margin for prohibited takings is when a species is listed as a "threatened species" under the ESA. It is not the courts job to figure out how many prohibited takings an endangered species can experience without irreparably injuring its ability to recover. For any court – without a statement by NMFS providing it the required information – the number of prohibited takings for it to allow any defendant to make is ZERO.

Case 1:22-cv-10364-IT   Document 1   Filed 03/09/22   Page 11 of 26

**8 March 2022 Complaint in** *M. A. X. v. Whale Killing Bastards et al. I.* **(D. Mass 2022)**                    11

30.     Any activity's likely future ESA Section 9 prohibited taking of an ESA Listed Species whose population is declining in number must be construed as irreparably injuring that species ability to recovery. As such the activity must be enjoined without regard for the adverse impact on any defendant. An ESA Listed Species with a declining population must be recognition as being in the middle of an "extinction event" that will lead to its imminent extinction unless something is done pro-actively to disrupt the event's progression. The only pro-active thing a court can do is to enjoin any activity that is likely to cause a future ESA Section 9 prohibited taking of any member of the declining species.

### Background on Examples of ESA Listed Endangered Species of Whales and Sea Turtles that are Adversely Affected by Commercial Fishing

31.     In the United States coastal waters, the Government Defendants are the #1 killers and inflictors of injury on Northern Black Whales and other ESA Listed Species of whales and sea turtles. All of their killings and harming of ESA Listed Species of endangered whales constitutes ESA Section 9 prohibited conduct. VBR Ropes are responsible for virtually all the historical entanglements of endangered whales and sea turtles by lobster/crab pot gear deployed along the US coastline.

32.     Upon information and belief since 1973 NMFS operates under an official policy of not enforcing the ESA Section 9 prohibition neither against itself, the state marine fishing agencies of Maine and Massachusetts, or against any state or federal license marine fisher. Concurrent with its No ESA Today practices, it chooses to manage endangered whales as "living marine fisheries resources," that might one day be harvested again by the fishing industry. As such, it requires the use of VBR and only considers the catching of whales by pot gear and gillnet fisheries as innocent "bycatch." As "bycatch" the Defendants considers endangered whales and sea turtles to be the same as a Sea Bass fish caught in the gear of a fisher only licensed to catch Pollack fish and nothing more of a problem. Endangered wildlife is just the same as commercially harvested fish caught by a fisher's fishing gear when it was not licensed to catch that particular species of otherwise commercially harvested fish. As "bycatch," whales just get tossed away by the fishers like they toss their bycatch of "trash" fish overboard without any concern that most of them are already dead.

33.     NMFS treats whales as commercial fisheries bycatch. In doing so it only deals with these caught endangered whale species by just managing commercial fisheries under the

Case 1:22-cv-10364-IT Document 1 Filed 03/09/22 Page 12 of 26

8 March 2022 Complaint in *M. A. X. v. Whale Killing Bastards et al. I.* (D. Mass 2022) 12

Marine Mammal Protection Act. The MMPA 1994 Amendments (drafted by a WINGO for the fishing industry) immunizes marine mammal bycatch from the MMPA's take prohibitions. NMFS historically just ignores the ESA Section 9 prohibitions. Under the 1994 Amendments fishers only need to comply with the fisher friendly regulations on their fishing implemented as regulations pursuant to MMPA Section 118 "Take Reduction Plans." The MMPA imposes no real restraints on whale bycatch despite the statute claiming it should have ended by 2000. Every TRP regulation issued for endangered whales in the Gulf of Maine since 1997 still requires fishers to use VBR attached to their fishing gear.

34.     Owing to NMFS, Maine and Massachusetts' Fishing Activity to continuously catch and kill Black Whales, by 2010 the species viability or sustainability was irreparably injured from the continuing unlawful takings by the Defendants Fishing Activity. The Black Whale's population commences to crash. The Northern Black Whale's population is now declining by ten percent each year which NMFS itself recognizes. "Doing the math" results with an incontrovertible estimate for Black Whale extinction occurring in just a little over a decade in the beginning of the 2030's.

35.     The Court in 2021 issued a decision as a final judgment memorandum on findings of fact law after a two-week trial in June 2021 on M. A. X's ESA claims against Defendant MDMF in a civil action he commenced against it in 2019. **FN7.** In that 2021 Judgment the Court ruled that Defendant MDMF's in 2021 licensing of lobster pot gear routinely catches ESA Listed Species of whales and it is prohibited conduct pursuant to ESA's Section taking prohibitions. The Court's earlier decision in *Strahan v. Coxe* has since been repeatedly cited by federal courts as controlling precedent. It is being used as controlling precedent by parties in a current federal lawsuit against the California's state-licensed Dungeness Crab pot fishery. This commercial marine fishery also requires the use of VBR. It is also violating the ESA's Section 9 by entangling endangered whales in California state waters.

36.     It is incontrovertible that the deployment of VBR in the coastal marine habitat of whales and sea turtles is on its own a categorical violation of the ESA's Section 9 prohibitions on

---

[7] *Man Against Xtinction v. Secretary, Mass. EOEEA et al.*, 19-cv-10639 (D. Mass. 2021). There was a trial held in June 2021. On 1 December 2021 that court issued a sixty-page memo that found that the state licensed pot and gillnet fishery entangled endangered whales and this conduct constitutes an ongoing ESA prohibited taking of ESA Listed Species of whales and sea turtles

the taking of these listed species. Over a hundred thousand Killing Ropes are annually deployed by fishermen licensed by the State Defendants for months at a time off the Massachusetts coast. These killing ropes are deployed in the coastal marine habitat of large whales and sea turtles. Every year, many Endangered Whales and Sea Turtles are routinely entangled, killed and/or injured from their encounter with VBR deployed in Massachusetts waters. Each of the Killing Ropes required to be deployed by the State Defendants' possess a significant risk to entangle, kill, and otherwise seriously injure large whales and sea turtles on any day of the year in Massachusetts coastal waters.

 37.    MAX as a state licensed commercial and recreational fisher refuses to use VBR in his lobster pot fishing equipment anymore. He is refusing to use VBR laden pot fis in order to prevent the entanglement of any Endangered Whale or Sea Turtle in his deployed lobster pot gear. Upon information and belief, he knows that every VBR in Massachusetts waters poses a significant risk to entangle and Endangered Whale or Sea Turtle inhabiting the area on any given day of the year.

 38.    The Black Whale as a species is now effectively EXTINCT. Black Whales no longer are capable of giving birth in the numbers required to support the survival of their species. In 208, there was zero births by Black Whales. This is a result of female Black Whales being repeatedly and unrelenting killed and seriously injury by the said VBR deployed under permit from the State Defendants. Only an immediate cessation of any further entanglement of Black Whales in Massachusetts waters will provide any reasonable chance for the Black Whale species continued survival on the Earth.

 39.    MAX is a conservation scientist petitioning the Court to ruthlessly enforce the "take prohibitions" imposed by Section 9 the Endangered Species Act against all the Defendants to stop their killing and injuring any more Endangered Whales and Sea Turtles from their deployment of killing ropes in Massachusetts coastal waters. Endangered Whale species include the Northern Black Whales and other species of whales **FN8.** Endangered Sea Turtles species

---

[8] The Endangered Whales includes: (1) The Sei Whale, *Balaenoptera borealis*; (2) The Northern Black Whale, *Eubalaena glacialis*: (3) The Humpback Whale *Megaptera novaeangliae*; (4) The Fin Whale *Balaenoptera physalus*: and (5) The Blue Whale, *Balaenoptera musculus*.

Case 1:22-cv-10364-IT   Document 1   Filed 03/09/22   Page 14 of 26

8 March 2022 Complaint in *M. A. X. v. Whale Killing Bastards et al. I.* (D. Mass 2022)                    14

includes Green Turtles and other species of Sea Turtles. **FN9** All of these Endangered Species are recognized as native resident species of Massachusetts. Endangered Whales and Sea Turtles are year round inhabitants of US coastal waters under the concurrent jurisdiction of Massachusetts.

40.     NMFS & MDMF are categorically violating the ESA's Section 9 take prohibitions by requiring that thousand plus fishermen that they license to use VBR when they go lobster pot fishing in United States coastal waters. Massachusetts' own endangered species Act ("MESA") prohibits the State Defendants from killing or injuring these endangered animals by requiring the use of VBR.

41.     Endangered Whales and Sea Turtles are resident species of the "Urban Sea" that exists along the northeast coastline of the United States. The Urban Sea consists of the harbors, bays, and inlets of the peri-urban coastal waters under the concurrent state jurisdiction of Maine, New Hampshire, Massachusetts and the other New England states and all federal waters out to the 200-mile ECZ boundary. In the Urban Sea, the Endangered Whales and Sea Turtles are routine killed, injured and their reproduction impaired by commercial and recreational anthropogenic activities. These anthropogenic activities include in part commercial fishing, vessel traffic and harbor operations, chemical pollution, disposal of plastic debris, and noise pollution ("Anthropogenic Threats").

42.     The Black Whales viability as a species has been eviscerated by the Anthropogenic stressors occurring in the Urban Sea of the United States and especially by the commercial activities licensed and regulated by the Defendants MDMF and its supra agency MEOEEA ("State Defendants"). Defendant MDMF is acting in concert with Defendant NMFS and other defendants to annually cause the deployment of veritable "mine fields" constituting thousands of Vertical Buoy Ropes ("Killing Rope Fields") that act like "fly paper" to entangle and kill and Black Whale, Sea Turtles and members of other species of whales — especially Humpback Whales — that come to swim through them. Individual Black Whales are repeatedly entangled by the Defendants licensed fishing gear in the Killing Fields of lobster/crab pots and

---

9 The Endangered Sea Turtles include: (1) The Green turtle, *Chelonia mydas,*; (2) Loggerhead turtle, *Caretta caretta,*; (3) The Olive Ridley turtle, *Lepidochelys olivacea*; (4) The Hawksbill turtle, *Eretmochelys imbricate*; (5) The Kemp's Ridley turtle, *Lepidochelys kempii*; and (6) The Leatherback turtle, *Dermochelys coriacea.*

gill nets. As a result they are seriously injured and killed as a result of these entanglements. Additionally, the ability of female Black Whales to breed is being adversely impaired from the repeated injuries inflicted on them by these entanglements and the adverse impact of the establishing of Killing Fields off the Massachusetts coast by the commercial defendants.

43.     The Black Whale's extinction in a few decades is now inevitable. The Black Whale's remaining population is no longer viable. Black Whales reproduction capability as a species has collapsed under the burden of the Anthropogenic Threats. Black Whales did not give birth to any young in 2018. Over the last ten years, Black Whales births have not replaced the Black Whales killed by Anthropogenic Threats and natural mortality. The Black Whales are effectively extinct unless all VBR Fields are eliminated and pro-active efforts commenced to increase their annual production of newborn calves.

44.     The Defendants are now conspiring to commit "Whale Fraud." The Defendants are maliciously acting in concert to deliberately prevent the enforcement of federal and state environmental laws at the intensity necessary to protect Black Whales and other endangered marine wildlife from being routinely killed and otherwise injured by VBR. They want as a categorical imperative to prevent any environmental laws from being enforced against the commercial fishing industry. Amazingly the Defendants have adopted a strategic practice to encourage the extinction of the Black Whale as its resolution to the legal conflict of its VBRs killing Endangered Whales and Sea Turtles.

45.     The fact of the Defendants Whale Fraud is factually supported by the fact that Defendant MDMF was found liable by the Court in 1996 for violating the ESA's Section 9 prohibitions by their killing and injuring Endangered Whale Species through their licensing and regulating commercial fishing by requiring the use VBR in pot and gillnet fishing gear. Instead of changing its ways after the Court's ruling, this Defendant chose to double-down on their illegal activities by use of fraud and force. They solicited the services of non-profit companies (e. g. the Center for Coastal Studies in Provincetown MA) to feign ineffective alterations of their illicit activities as reducing the incidents of Black Whales and Humpback Whales being killed and injured by their commercial fishing activities on Black Whale survival

46.     Upon information and belief, in recent years the incidents of the Defendants pot gear and gill nets catching Endangered Whales and Sea Turtles has increased and not diminished. This is because there has been an explosion in the population of Amerikan Lobsters

off the US northeastern coast coincident with an increase in the consumer market for lobster. Now more commercial fishermen are deploying more commercial fishing gear due to the greater market demand and the larger lobster population that can meet this demand. It is important to note that there are more lobsters because their main predator — the Cod fish — was recently wiped out by overfishing authorized and encouraged by Defendants NMFS and MDMF

47.    The bottom line is that the Black Whale now faces inevitable extinction in the next few decades. This species extinction is mostly due to its annually being repeatedly being killed and injured by the Defendants deployment in the Gulf of Maine of pot and gillnet fishing gear constituting hundreds of thousands of VBR. In 2022, one Black Whale caught by the Defendants' Fishing Activity constitutes an irreparable injury to this species ability to recover from its biological endangered status. Unless the Defendants' Fishing Activity is stopped immediately the extinction of the Black Whale's species is inevitable.

### Plaintiff's Claims Against the Defendants

COUNT I:    *Defendants Violation of 16 USC § 1538(a and g): The Defendants MDMF, MFAC & NMFS Licensing and Regulating Individuals to Deploy Fishing Gear Using VBR is Prohibited Conduct Pursuant to the ESA Section 9(a & g) Prohibitions Against the Taking of Endangered Species of Whales and Sea Turtles* **FN10**

48.    The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 47.

49.    Endangered Whales and Sea Turtles are resident species of wildlife in US coastal waters under the concurrent state jurisdiction of Massachusetts. Black Whales reside in every month of the year in Massachusetts coastal waters. Black Whales are known to give birth in Cape Cod Bay, other bays and inlets along the Massachusetts coastline. All Endangered Whales and Sea Turtles are listed by Massachusetts as resident species of Massachusetts and protected as endangered species under the Massachusetts Endangered Species Act.

---

[10] **ESA Section 9(a):**[I]t is unlawful for any person subject to the jurisdiction of the United States to— (A) import any such species into, or export any such species from the United States; (B) take any such species within the United States or the territorial sea of the United States; (C) take any such species upon the high seas; (D) possess, sell, deliver, carry, transport, or ship, by any means whatsoever, any such species taken in violation of subparagraphs (B) and (C); … or (G) violate any regulation pertaining to such species or to any threatened species of fish or wildlife listed pursuant to section 4 of this Act and promulgated by the Secretary pursuant to authority provided by this Act.

Case 1:22-cv-10364-IT   Document 1   Filed 03/09/22   Page 17 of 26

8 March 2022 Complaint in *M. A. X. v. Whale Killing Bastards et al. I.* (D. Mass 2022)                                    17

50.     Defendants NMFS and MDMF/MFAC are licensing and regulating all recreational and commercial fishing operation off the Atlantic coastline in waters under the concurrent state jurisdiction of the state of Massachusetts. These Defendants — require only by regulation and not by statute — that the Public it licenses to do lobster/crab pot fishing must use VBR on their pot gear. The MDMF licenses about 1,000 private individuals to do commercial pot fishing and thousands of other individuals to do recreational pot fishing in Massachusetts coastal waters.

51.     Since 1973, Massachusetts resident Endangered Whales and Sea Turtles are routinely caught in their encounters with VBR deployed in Massachusetts state waters. In Massachusetts state waters fishing gear using VBR are responsible for nearly all the entanglements of Endangered Whales and Sea Turtles in fishing gear licensed and regulated by NMFS and MDMF/MFAC. In prior lawsuits against NMFS and MDMF, the M. A. X. subpoenaed from NOAA entanglement records of Endangered Whales and Sea Turtles. In these records NOAA reported that VBR was the apparent cause in all these reported entanglements of Endangered Whales and Sea Turtles.

52.     The NMFS and MDMF/MFAC have required the use of VBR in lobsterpot hear from 1973 to the present day. From 1973 to the present day. Endangered Whales and Sea Turtles have been entangled, killed and injured by their encounters with VBR deployed in Massachusetts state waters. Endangered Whales and Sea Turtles are attracted to VBR. Whales enjoy rubbing up against them and this phenomenon results in their becoming entangled in the VBR.

53.     Starting in 1996 and continuing in 2021, the Court ruled repeatedly that Endangered Whales were routinely being entangled in VBR on pot gear deployed in state waters. The Court then ruled repeatedly that MDMF is violating the ESA's Section 9 prohibitions against taking Endangered Whales requiring the use of VBR by the fishermen that they license to deploy pot and gillnet fishing gear in state waters made them liable This is after the Court first ruled in *Strahan v, Coxe* that these said entanglements by the NMFS and MDMF were a violation of the ESA Section 9 prohibition against taking ESA listed endangered species of wildlife.

54.     Based on the Court's *Strahan v. Coxe* ruling, there is no doubt that since 1973 the NMFS and MDMF/MFAC annually have intentionally violated the ESA's Section 9 prohibitions by continuing to require the use of VBR on the fishing gear that they license and regulate for

Case 1:22-cv-10364-IT   Document 1   Filed 03/09/22   Page 18 of 26

8 March 2022 Complaint in *M. A. X. v. Whale Killing Bastards et al. I.* (D. Mass 2022)          18

deployment in Massachusetts state waters. Since 1996, the NMFS and MDMF/MFAC chose to continue requiring the use of VBR by its licensed lobsterpot fishermen. In fact, since 1996 the State Defendant the number of VBR deployed in Massachusetts state waters. At a minimum the NMFS and MDMF/MFAC are currently responsible for the annual deployment over 100,000 VBR in Massachusetts state waters. There is no question that the NMFS and MDMF/MFAC licensing and regulation of lobsterpot fishing is responsible for many of annual reported entanglements of Black Whales and other Endangered Whales in VBR in US coastal waters.

55.     In 2021 NOAA produced a "stock assessment report" under the MMPA assessing the number of annually killings and serious injuring of Black Whale in lobsterpot gear. It claims there are annually about five reported killings/injuring of Black Whales in recent years. The report also claims that NOAA has determined that the killing/injuring of a single Black Whale threatens their species with imminent extinction. Since Massachusetts accounts for almost half of all lobsterpot fishing activity along the US coastline, there is no question that the NMFS and MDMF/MFAC are liable for several killings/injuring of Black Whale in the VBR used in lobsterpot gear.

56.     At the April 2019 meeting of the NOAA's Atlantic Large Whale Take Reduction Team, the NMFS and MDMF/MFAC voluntarily agreed to reduce by thirty percent or more the deployment the risk it currently poses to annually kill/injure Black Whales in its state lobsterpot fishery. This constitutes incontrovertible admission by the NMFS and MDMF/MFAC that its lobsterpot fisheries poses in 2022 a clear and present danger to kill/injure annually several Black Whales. Since NOAA has determined that the continued killing of just one Black Whale annually condemns the Black Whale species to extinction, the NMFS and MDMF/MFAC' lobsterpot fishery also poses a clear and present danger to extirpate the Black Whale species in the near future.

**In 2022, NMFS & MDMF/MFAC Fishing Activity is Prohibited Conduct Pursuant to ESA's Section 9 Prohibitions Against Taking Endangered Whales and Sea Turtles.**

57.     Since the Court in 1996 determined that Defendants NMFS, MDMF & MFAC lobsterpot fishery violated the ESA's Section 9 prohibition, its still requiring that VBRs be used on its licensed lobsterpot gear continues to the present day and it's a continuing violation until it is cured. The ESA Section 9 prohibitions is a core requirement of the ESA statute, regulations, ESA case law and NOAA policy. Any individual's activities once determined to have violated

the ESA Section 9 prohibitions retains its violator status until it is purged by either a Court or by NOAA's making a formal determination — pursuant to an application under ESA Section 10 for an Incidental Take Permit — that the violator's said activity is unlikely to take a ESA listed species in the future.

58.     It is also now a categorical violation of the ESA's Section 9 take prohibitions for anyone to deploy VBR and gill nets in marine habitat historically used by Endangered Whales and Sea Turtles. Only when the deployment can be guaranteed to occur without the presence of Endangered Whales and Sea Turtles is it possible to construe the use of VBR as not categorically violating ESA Section 9 take prohibitions. Putting Killing Ropes in habitat occupied by whales is just like pouring cyanide in the water. Since it cannot be removed immediately when an endangered whale or sea turtle shows up, the deployment cannot be lawfully done in the first place. This reality is enforced by two incontrovertible facts. If a whale touches a VBR this is a prohibited entanglement. Endangered Whales and Sea Turtles are attracted to and readily interact with VBR.

59.     The NOAA listed Cape Cod Bay and other areas subject to the NMFS and MDMF/MFAC lobsterpot fishing activities as ESA listed designated critical habitat for the Northern Black Whale **FN11** Defendants MDMF/MFAC are licensing and regulating commercial fishing operation off the Atlantic coastline in waters under the concurrent state jurisdiction of the state of Massachusetts. The deployment of VBR in listed ESA designated critical habitat for the Black Whale in Cape Cod Bay an off the Massachusetts coastline. The deployment of many tons of plastic fishing and the resultant "ghost gear" left behind adversely alters the marine habitat of the Black Whales critical habitat. Black Whales have been know to give birth in Cape Cod Bay and other areas of its designated critical habitat.

60.     Once an individual engages in an activity that constitutes ESA Section 9 prohibited conduct, then the burden of proof shifts to that individual to PROVE that its continuing activity will not violate the ESA Section 9 prohibitions in the future. The only way it can lawfully do that is by applying to NOAA for an Incidental Take Permit pursuant to ESA Section 10. It is incontrovertible that the NMFS and MDMF/MFAC bear the burden now of proving that their continuing licensed/regulated deployment annually of over 100,000 VBR in

---

[11] 50 CFR 226.203 and *Federal Register*, Vol. 81, No. 17, 27 January 2016

Case 1:22-cv-10364-IT   Document 1   Filed 03/09/22   Page 20 of 26

8 March 2022 Complaint in *M. A. X. v. Whale Killing Bastards et al. I.* (D. Mass 2022)          20

Black Whale habitat will not result in the entanglement of a single Black Whale or any other Endangered Whale or Se Turtle. As stated, it is incontrovertible that the NMFS and MDMF — annually licensing the deployment of over 100,000 VBR in state waters — cannot prove that at least one further incident of an entanglement of a Black Whale in their licensed lobsterpot gear.

### NMFS, MDMF, and MFAC Fishing will Never Stop their ESA Prohibited Fishing Activity Absent a Coercive Order

61.     In 1996 and continuing today, Defendants NMFS, MDMF & MFAC, their employees, and the other Defendants are part of an occupational culture that opposes and fights to prevent any environmental laws from being enforced against the recreational and commercial fishing industry. For example, the Massachusetts Environmental Policy Act requires a review of all commercial activities for their impact on the environment. Yet, the NMFS and MDMF have refused to do a MEPA review on the state's commercial fishing industry.

62.     FIRST, Massachusetts statute imposes no authority on the Defendants MDMF and MFAC either to authorize the taking of ESA listed species or to "conserve" these species. The opposite is true. The Massachusetts Endangered Species assigns the conservation of all state listed marine endangered species to another state agency. Massachusetts' statutes only authorizes the MDMF/MFAC to regulate recreational and commercial marine fisheries. There is no Massachusetts statute that authorizes MDMF/MFAC to regulate any activity – including marine fisheries – to protect state listed endangered marine wildlife for any reason. Historically, Massachusetts government chose to deliberately adopt an unlawful policy of allowing the MDMF/MFAC to evade the enforcement federal and state wildlife laws by deciding on its own whether or not state listed marine wildlife is murdered by its licensed and regulated marine fisheries. This means that all the MDMF/MFAC implemented regulations pursuant to 322 CMR 12.00 et seq. to "conserve" Black Whales are facially invalid since the MDMF has no statutory authority to either to tell boaters to stay away from Black Whales or to even stop anyone from killing any marine mammal in state waters.

63.     The above is blatant and incontrovertible evidence of the ongoing malicious and unlawful efforts of the NMFS and MDMF to evade any enforcement of the ESA and all other environmental laws against the Massachusetts commercial fishing industry. In Massachusetts the governance culture surrounding the commercial marine fishing industry is facially and as applied

Case 1:22-cv-10364-IT    Document 1    Filed 03/09/22    Page 21 of 26

**8 March 2022 Complaint in *M. A. X. v. Whale Killing Bastards et al. I.* (D. Mass 2022)**    21

in violation of the Constitution and the Massachusetts Constitution. The Massachusetts statutes and regulations that controls the MDMF, and the ESA violations by the Defendants only serves the Public Bad and not the Public Interest.

64.     Since 1996, the number of VBR deployed in Massachusetts coastal waters has steadily increased. This means that the quantifiable threat factor for entanglement has risen — and not decreased — for VBR to entangle Endangered Whales and Sea Turtles in Massachusetts waters. Also since 1996, *Strahan v. Coxe* has set a precedent for Federal courts to repeatedly hold federal and state agencies liable for violating the ESA's Section 9 prohibitions when their licensing actions results in the unlawful taking of these species in violation of the ESA Section 9(a) prohibitions. **FN12**.

COUNT II:     *Defendants Violation of 16 USC § 1538(a and g): Defendants Sawyer, Martin & Haviland's Deployment of Fishing Gear Using VBR in ESA Designated Northern Black Whale Critical Habitat off the Massachusetts Coast is by Itself a Categorically Prohibited Conduct Pursuant to the ESA's Section 9 Taking Prohibitions* **FN13** (Defendants Haviland and Sawyer).

65.     The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 64.

66.     The Deployment of fishing gear by anyone using VBR in the ESA Listed critical habitat for Northern Black Whales in the Gulf of Maine constitutes in itself per se prohibited conduct pursuant to the ESA's Section take prohibitions.  Defendants Haviland, Martin and Sawyer in the past and in 2022 are engaged in ESA Section 9 prohibited conduct by their deploying in waters off the Massachusetts coast fishing gear using VBR. They are licensed in 2022 by the NMFS and/or MDMF to deploy pot and/or gillnet fishing gear laden with VBR in United States coast waters off the coast of Massachusetts. The pot and gillnet fishing of these

---

[12] See also *Florida Key Deer v. Paulison*, 522 F.3d 1133 (11th Cir. 2008) and *Florida Key Deer v. Stickney*, 864 F. Supp. 1222 (Dist. FL 1994) (Federal Emergency Management Agency violates ESA §§ 9 and 7 for its authorizing, regulating, and funding commercial development in habitat of ESA listed endangered deer species).

[13] **ESA Section 9(a):**[I]t is unlawful for any person subject to the jurisdiction of the United States to— (A) import any such species into, or export any such species from the United States; (B) take any such species within the United States or the territorial sea of the United States; (C) take any such species upon the high seas; (D) possess, sell, deliver, carry, transport, or ship, by any means whatsoever, any such species taken in violation of subparagraphs (B) and (C); ... or (G) violate any regulation pertaining to such species or to any threatened species of fish or wildlife listed pursuant to section 4 of this Act and promulgated by the Secretary pursuant to authority provided by this Act.

Defendants routinely kills and seriously injured ESA listed endangered whales and sea turtles by entanglement. The National Marine Fisheries Service issued its List of Fisheries for 2021 under the authority given it by the Marine Mammal Protection Act. NMFS' LOF lists these Defendants pot and gillnet fisheries as Category I fisheries that repeatedly kill and seriously injure Black Whales and other ESA listed endangered species of whales. These Defendants activity of engaging in lobsterpot and gillnet fisheries is prohibited by the ESA's Section 9 prohibitions against the taking of ESA listed species of whales and sea turtles.

67.     The Defendants Haviland, Martin and Sawyer deploy their lobsterpot and/or gillnet fishing gear in United States coastal waters that NMFS listed as ESA designated critical habitat in the Gulf of Maine for the Northern Black Whale. These Defendants take Black Whales through "Harm" by altering their critical habitat as to impair their feeding, breeding and other vital life functions. Additionally, the Defendants annually dump and abandon thousands of pounds of plastic fishing gear and vertical buoy line into critical habitat for the Black Whale. This is "ghost gear" that continues to "harm" and otherwise kill, injure and take Black Whales.

68.     These Defendants will continue their said ESA Section 9(a) prohibited taking of Endangered Species of Whales and Sea Turtles into the future unless ordered to stop by the Court.

COUNT III:     *Defendants Violation of 42 USC § 1983: The Defendants McKiernan and Sawyers Violation of the Civil Rights Act: The Retaliation Against the Plaintiff for Petitioning the Courts by Refusing me Access to Public Information, Gagging State Employees for Talking to Me, and Refusing to Accept My Petitions for Regulatory Reform.*

69.     The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 68.

70.     The Defendant Daniel McKiernan is a state who is violating the Plaintiff's First Amendment protected rights to petition the MDMF and the Court to engage in core political Free Speech. This defendant is intimidating and coercing state employees from talking and otherwise communicating with the Plaintiff on any issue. He has deliberately and maliciously denied the Plaintiff access to Public records and the opportunity to consult with MDMF employees in order to deter him from being able to affect and alter MDMF current policy to evade environmental laws being enforced against MDMF's Fishing Activities and to thwart his ability to petition the Court for said redress.

71.     Starting in 2019, Defendants Mckiernan usurped his employment authority to personally coerce MDMF employees in order stop them from providing the Plaintiff any opportunity to apply for either a commercial or recreational lobsterpot fishing license. On 4 April 2019 and on 29 April 2019, MDMF attempted to get either a recreational and/or a commercial lobsterpot permit for students. This Defendant coerced and intimidated MDMF employees to stop them from issuing fishing licenses to the Plaintiff that he was legally entitled to get. He did this to intimidate and coerce M. A. X. from petition the Court for relief and in retaliation for his ongoing efforts to stop the deployment of any VBR fishing gear off the Massachusetts coast.

72.     Because McKiernan and Sawyer usurps their MDMF employment authorities to implement and enforce an unlawful MDMF policies that are prohibited under the ESA & MMPA, they are preventing M. A. X. from being able to petition the MDMF/MFAC to not allow state licensed marine fishing activity to adversely affect Ocean biodiversity. This violates his constitutionally protected right to petition the government and obtain a fair consideration by Massachusetts agencies of his petitioned for protections by it of Ocean biodiversity. His petitions are insured of being immediately rejected from any fair consideration by state agencies by being a threat to MDMF/MFAC unlawful policy of allowing the fishing industry to kill off all endangered marine wildlife.

73.     M.A.X. has wasted over $100,000 of his personal resources since 1997 trying to recover Ocean biodiversity simply owing to McKiernan, Sawyer and other Massachusetts state actors refusing to allow him to petition MDMF/MFAC in order to insure that the fishing industry is unimpaired in being allowed to destroy Ocean biodiversity pursuant to their commercially harvesting of marine wildlife.

Case 1:22-cv-10364-IT   Document 1   Filed 03/09/22   Page 24 of 26

8 March 2022 Complaint in *M. A. X. v. Whale Killing Bastards et al. I.* (D. Mass 2022)          24

## The Plaintiff's Supplemental Claims Against the Defendants

COUNT V:     *Defendants Sawyer, Martin Haviland, Martin are Public Nuisances and Have Caused Millions of Dollars of Injury to the Plaintiff in Injuring Him and Other Members of the Public.* **FN14**

74.     The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 73.

75.     The said Defendants have for decades unlawfully killed and injured marine wildlife protected under state and federal law to serve the Public Interest. They annually in the past and will in 2022 deploy fishing gear in Massachusetts state waters using VBR that is prohibited from them doing so by the ESA's Section 9 take prohibitions and is also prohibited under the MMPA. In doing so these Defendants routinely catch, kill and injure ESA Listed Species of whales and sea turtles. Annually their fishing activity dumps tons of plastic and metal debris into Massachusetts coastal waters and remains as "ghost gear" that continues to kill and injure all forms of marine wildlife.

76.     The Plaintiff is uniquely situated to suffer tortious injury from these Defendants as a result of there being Public Nuisances. He belongs to a small group of licensed commercial and recreational marine fishermen that is being injured by their killing marine mammals and as a result the Plaintiff is being threatened with arrest and loss of fishing license if he does not use vertical buoy ropes or if he approached any endangered whales or sea turtle. Strahan is attempting to do research and recover the Black Whales. These Defendants' public nuisance has caused the Plaintiff tortious injury and prevented them from recovering the Black Whale from its endangered species status.

COUNT VI:     Defendants McKiernan and Sawyer's *Violation of the Massachusetts Civil Rights Act* **FN15**

78.     The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 77.

---

[14] See *Sullivan v. Chief Justice for Admin. & Mgmt. of the Trial Court*, 448 Mass. at 34–35 & *Planned Parenthood League of Mass., Inc. v. Operation Rescue*, 406 Mass. 701, 707 (1990) (valid case for public nuisance where the defendant had interfered with the rights of the plaintiff's patients to obtain abortion).

[15] GL Chapter 12 § 11H

79.     The Defendants McKiernan & Sawyer are acting as individuals and usurping their state employment authority to use threats against Strahan and MDMF/MDMF employees to stop the Plaintiff from getting any commercial/recreational lobsterpot license and to coerce him from suing the Massachusetts government to save the Black Whale. These threats and intimidation are a facial and applied violation of the Massachusetts Civil Rights Act. Defendant McKiernan issued a trespass notice against the Plaintiff to unlawfully threaten and coerce him from entering ever again the Public areas of the MDM/MFACF office. These Defendants have also threatened and coerced in violation of law all other MDMF/MFAC employees to not speak with the Plaintiff, provide him any state services, and to not allow him access to any public records that is in MDMF possession. All of these unlawful acts by these Defendants is a threat to intimidate the Plaintiff and to coerce him from protecting endangered wildlife, bringing lawsuits against the NMFS and MDMF and commercial fishermen, and conducting political advocacy for whale safe fishing.

80.     Unless the Court orders McKiernan & Sawyer to stop, they will continue to threaten and intimidate the Plaintiff to coerce him from enjoying his statutory and constitutionally protected rights of Free Speech and to petition the courts.

Case 1:22-cv-10364-IT Document 1 Filed 03/09/22 Page 26 of 26

8 March 2022 Complaint in *M. A. X. v. Whale Killing Bastards et al. I.* (D. Mass 2022)                26

## PRAYER FOR RELIEF

I.      For a Declaratory Judgment that in 2022 the deployment of pot and gillnet fishing gear by any individual, or by the said deployment being required and/or licensed by NMFS. MDMF or MFAC, in ESA listed designated critical habitat for the Northern Black Whale off the Massachusetts coast is by itself *per se* prohibited conduct pursuant to the ESA's Section 9 taking prohibitions.

II.     For a Declaratory Judgment that the Defendants are violating the ESA's Section 9(a and g) prohibitions by taking members of Endangered Species of Whales and Sea Turtles off the US coast pursuant to their respective involvement in pot and gillnet fishing operations that deploy Vertical Buoy Ropes in coastal waters that within the boundaries of ESA listed designated critical habitat for the Northern Black Whale off the Massachusetts coast. .

III.    For an order, enjoining the Defendants from licensing or engaging in further Pot and/or Gill Net fisheries operations catch and otherwise take ESA Listed Species of whales and sea turtles and otherwise adversely affect the quality of the ESA listed designated critical habitat for Northern Black Whales need for this species to recover from its biological endangered status.

V.      For an award of 1,000,000 in compensatory relief and punitive damages from Defendants Sawyer, and McKiernan.

VI.     For an award of the Plaintiff's direct costs of his prosecution against the Defendants.

VII.    For any further relief that the Court deems appropriate.

BY:


/s/ Richard Maximus Strahan
_____
Richard Maximus Strahan as Man Against Xtinction
617-817-4402

*Vir Rei Publicae Necessarius Est*

## VERIFICATION OF THE COMPLAINT

The Plaintiff verify under the pains and penalties of perjury that all the facts alleged in the above complaint are known to the best of my ability to be scientifically true. Signed under the pains and penalties of perjury this 8th day of March in the year 2022.

BY:


/s/ Richard Maximus Strahan
_____
Richard Maximus Strahan as Man Against Xtinction